[Cite as *State v. Green*, 2012-Ohio-1941.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96966**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DANIEL GREEN

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545667

**BEFORE:** Sweeney, J., Boyle, P.J., and Keough, J.
**RELEASED AND JOURNALIZED:** May 3, 2012

**FOR APPELLANT**

Daniel Green, Pro Se
No. 601-874
North Central Correctional Institution
P.O. Box 1812
Marion, Ohio 43302

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Brent C. Kirvel, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

**{¶1}** Defendant-appellant, Daniel Green, appeals following his conviction and sentence on one count of sexual battery. For the reasons that follow, we affirm.

**{¶2}** Defendant was charged with the following offenses: two counts of rape in violation of R.C. 2907.02(A)(2); two counts of sexual battery in violation of R.C. 2907.029(A)(2); two counts of sexual battery in violation of R.C. 2907.03(A)(1); two counts of sexual battery in violation of R.C. 2907.03(A)(9); two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1); and two counts of kidnapping in violation of R.C. 2905.01(A)(4). Every count contained either a sexually violent predator specification or a sexual motivation specification.

**{¶3}** On February 28, 2011, the trial court held a hearing where the state reviewed the charges and specifications, potential penalties for each, and the plea offer. The trial judge advised defendant "[i]f you'd like to have a trial, I am happy to do that. That is your right and if you would like to exercise that right, I certainly will go ahead with the trial." The trial court explained its reason for reviewing the charges, potential penalties, and plea offers on the record was "to give [defendant] the opportunity to hear what you're facing as charged and what you're facing should you enter the plea bargain." The court explained that defendant had "to decide what's best for [him] * * * like a cost benefits analysis or risk benefit analysis * * * what [his] risk is if [he] should have a trial and what [his] risk or

exposure is if [he] should enter a plea." The court acknowledged that defendant could be found not guilty at trial.

{¶4} Defendant was advised of the potential penalties he faced if convicted of all counts and specifications in the indictment. He was informed that he faced a potential sentence of at least sixty years. Defendant was further informed that if he was convicted of the sexually violent predator specifications, the parole board would have discretion to deny him parole for life. Defendant indicated that he understood.

{¶5} The trial court advised, "I have no idea what the evidence is, how it would come out, whether you would be found guilty or not guilty. That's something for the jury to decide."

{¶6} The state proceeded to place the plea offer on the record. The state was willing to accept a guilty plea on one count of sexual battery without any specifications. In exchange, all remaining counts and specifications would be dismissed.

{¶7} The trial court explained that the plea offer reduced defendant's potential penalty to a probationable third degree felony. Defendant was advised that he would no longer face a potential additional ten years or the life tail with the parole board because the sexual violent predator specification would be removed. Defendant was told his potential penalty under the plea agreement "would be anywhere from a probationable offense, one to five years in prison" with "a tier three registration."[1]

---

[1]The tier three registration related the statutory registration and reporting requirements involved with a sexual offense conviction.

{¶8} On February 28, 2011, defendant indicated his desire to proceed with a trial with the explicit understanding that above-referenced plea offer would no longer be available to him. At that point, the trial court addressed defendant's speedy trial rights. Defendant executed a waiver of speedy trial through May 4, 2011.

{¶9} Another hearing was held on April 4, 2011 where defendant expressed his desire to enter a guilty plea. Defendant pled guilty to one count of sexual battery, a third degree felony, and all other specifications and charges were dismissed.

{¶10} Defendant subsequently filed a motion to withdraw his guilty plea that the trial court denied after holding a hearing. Defendant also filed a motion to disqualify his counsel that was also denied after a hearing. The trial court held a sentencing hearing and ordered defendant to serve a four year prison sentence. Defendant was advised of additional penalties and consequences including postrelease control as well as registration and reporting requirements implicated by his conviction.

{¶11} Defendant assigns five errors for our review.

{¶12} "Assignment of Error No. I: The trial court's participation in the plea bargain process rendered the proceedings fundamentally unfair as to deny Appellant due process of law."

{¶13} "A trial judge's participation in the plea bargaining process will be carefully scrutinized to determine if it affected the voluntariness of the defendant's plea." *State v. Byrd*, 63 Ohio St.2d 288, 407 N.E.2d 1384 (1980) syllabus.

{¶14} The Ohio Supreme Court determined from the record facts in *Byrd* that "the judge's conduct in all probability led appellant to believe he could not get a fair trial." *Id*. at 294. In *Byrd*, the judge solicited private meetings with the defendant's mother and sister and encouraged them to pressure Byrd to enter a guilty plea. The mother and sister said that the judge told them defendant would most likely get "the chair" if he went to trial. After speaking with his relatives, Byrd met with the judge in chambers and without legal representation where he was further pressured to enter a guilty plea by the judge. "The judge took a very active role in arranging the plea bargain. In essence, he negotiated with the assistant prosecuting attorney." *Id*. at 290. The judge told Byrd he thought the plea was "a pretty good deal." *Id*. "[T]he judge enlisted Lt. Coney's aid in his efforts to persuade Byrd to enter a plea. Coney was admittedly a friend of Byrd's family. It is apparent from the transcript that Coney, on the judge's request, had pressured Byrd to enter a plea prior to the meeting as well." *Id.* In addition, Byrd suffered from a methadone addiction and he was not given an opportunity to discuss the judge's remarks with counsel. The Ohio Supreme Court found both factors exacerbated the coercive effect of the judge's involvement. *Id.*

{¶15} In this case, the trial court never expressed an attitude about defendant's guilt prior to him entering a guilty plea. Quite the opposite, the trial court noted that defendant could be found not guilty at trial. The court stated "I have no idea what the evidence is, how it would come out, whether you would be found guilty or not guilty. That's something for the jury to decide."

{¶16} Defendant cites to portions of the record where the trial court explained the potential penalties that he faced on the various counts of the indictment. The trial court inquired if defendant understood them. Defendant maintains this colloquy led him to believe he could not receive a fair trial. The transcript, however, does not support this view. Defendant was informed of the significant time he faced if convicted, which he agreed was "in essence a life sentence." Defendant does not indicate that this advice was inaccurate or wrong.

{¶17} Defendant's claims of coercion are further undermined by the fact he, in fact, rejected the plea offer on the record. The trial court accepted defendant's decision and began preparations for trial. Although the February 28, 2011 transcript of proceedings indicated that the plea offer was to expire that day, defendant was apparently still able to enter the same guilty plea in April of that year.

{¶18} The trial court did not take an active role in the plea bargain at all. The transcript reflects that the trial court merely had the state place the terms of the plea offer on the record. The court explained its reasons for doing so was to ensure that defendant made an informed decision to proceed to trial.

{¶19} This is not only permissible but a good practice in light of recent authority that recognizes the critical role plea negotiations play in criminal proceedings. *See Missouri v. Frye*, _____ U.S. _____, _____ S.Ct. _____, _____L.Ed.2d _____, 2012 WL 932020 (U.S. 2012) (counsel was deficient in failing to communicate to defendant written plea offer before it expired). In *Frye*, the United States Supreme Court observed that

"formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id.*

**{¶20}** The transcript reflects that the trial court made the state's formal plea offer part of the record and nothing more. Accordingly, this assignment of error is overruled.

**{¶21}** "Assignment of Error No. II: The Appellee engaged in intentional misconduct calculated to goad Appellant into entering his initial guilty plea."

**{¶22}** "Assignment of Error No. III: Appellant was denied the effective assistance of counsel in violation of his Sixth Amendment Right to counsel and his Fourteenth Amendment Right to due process."

**{¶23}** Defendant contends that the indictment improperly charged him with sexually violent predator specifications when he had no prior conviction for a sexually violent of offense. He contends this constituted both intentional misconduct on the part of the state as a means of leveraging him into a guilty plea and that his counsel was deficient by allowing him to enter a guilty plea without challenging it.

**{¶24}** Defendant relies on *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283, in support of his position. In *Smith*, the court held that a "conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1) if the conduct leading to the conviction and the sexually violent predator specification are charged in the same indictment." *Id.* at syllabus. However, in reaching this conclusion the court was interpreting a prior version

of R.C. 2971.01(H)(1).[2]  The General Assembly subsequently amended the statute with the purpose of clarifying "'that the Sexually Violent Predator Sentencing Law does not require that an offender have a prior conviction of a sexually violent offense in order to be sentenced under that law.'" *State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311, ¶ 30, quoting, 2004 Ohio Laws File 163 (Am.Sub.H.B. 473); *see also State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, ¶ 50.  Courts have construed the present version of the law to supersede *Smith* and permit the specification to apply to first-time offenders being charged with a sexually violent offense in the same indictment. *Id.*

**{¶25}**  Given the revisions to the statute and the General Assembly's explicit purposes in enacting them, defendant's reliance on *Smith* is misplaced.  The present law allows for the inclusion of a sexually violent predator specification in the indictment of one being charged for the first time with a sexually violent offense. Accordingly, the state did not engage in any intentional misconduct concerning the inclusion of the sexually violent predator specifications in defendant's indictment nor did defense counsel render

---

[2]"Prior to April 29, 2005, R.C. 2971[.01](H)(1), defined a sexually violent predator as 'a person who *has been convicted of* or *pleaded guilty to* committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.'" *State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311, ¶ 28. The current version of the statute provides: "'Sexually violent predator' means a person who, on or after January 1, 1997, *commits* a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1), emphasis added.

ineffective assistance of counsel regarding them. These assignments of error are overruled.

{¶26} "Assignment of Error IV: The trial court erred resulting in prejudice to Appellant by accepting his plea without first addressing him personally and informing him a guilty plea is a complete admission of guilt."

{¶27} Defendant alleges that he did not understand his guilty plea was a complete admission of guilt. This relates to a non-constitutional right, which implicates a standard of review as to whether the trial court substantially complied with Crim.R. 11. *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990).

> Though failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption that it was entered involuntarily and unknowingly, failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice. [*Nero,* 56 Ohio St.3d], at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id*. Under the substantial-compliance standard, we review the totality of circumstances surrounding [defendant's] plea and determine whether he subjectively understood that a guilty plea is a complete admission of guilt. *Id*.

*State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. The record here indicates that defendant understood his guilty plea was a complete admission of guilt.

{¶28} The court reviewed the various constitutional rights that defendant was giving up by entering the guilty plea, including his right to counsel, to subpoena and cross-examine witnesses, to have the state prove his guilt beyond a reasonable doubt, and the right to remain silent and not testify.

{¶29}     The discovery produced to the defense included video surveillance showing defendant and the fourteen year old victim entering a room in the municipal recreation center together where they stayed for a period of time. Scientific testing identified the presence of defendant's and the victim's seminal fluid. Further, the record indicates that defendant voluntarily submitted to a lie detector test, which he failed.

{¶30}     One who enters a guilty plea without asserting actual innocence is presumed to understand he has completely admitted his guilt.  *Id*. at ¶ 19.  At no time during the guilty plea proceedings did the defendant assert actual innocence. The record demonstrates that defendant understood that by entering his guilty plea, he was admitting to committing sexual battery.   This assignment of error is overruled.

{¶31}     "Assignment of Error V: The trial court erred resulting in prejudice to Appellant when it imposed four years near the maximum sentence for a first time offender in violation of due process clause to the State and Federal Constitutions."

{¶32}     Defendant asserts that his four year prison term is contrary to law because he is a first-time offender and the sentence is at the high end of the sentencing range for his conviction.   Defendant generally asserts that amendments to Ohio's sentencing law, which took effect on September 30, 2011, render his sentence contrary to law. They do not. The current version of the law provides that the sentencing range for felonies of the third degree includes a prison term anywhere from "twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months."   *See* R.C. 2929.14(A)(3)(a). Defendant's four year prison term is within the permissible range and there is no present

requirement that the trial court make any explicit statutory findings before imposing a prison sentence on a first-time offender. Accordingly, defendant's assertions to the contrary are incorrect and this assignment of error is overruled.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR