[Cite as *State v. Alexander*, 2012-Ohio-3349.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-110828 |
| | | C-110829 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1104473 |
| | | B-1103448 |
| vs. | : | |
| | | |
| YVONNE ALEXANDER, | : | |
| | | |
| Defendant-Appellant. | : | *O P I N I O N.* |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal:  July 27, 2012


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Fox & Scott, PLLC,* and *Bradley Fox,* for Defendant-Appellant.


Please note:  These cases have been removed from the accelerated calendar.

**CUNNINGHAM, Judge**.

{¶1} Defendant-appellant Yvonne Alexander challenges the sentences imposed following her pleas of guilty to ten counts of theft from elderly or disabled adults in the case numbered B-1103448 and to a single count of Medicaid fraud in the case numbered B-1104473. Alexander had used her position as a manager of a group home for developmentally disabled adults to steal the retirement and disability payments of those in her care. The theft offenses were variously punishable as second-, third-, and fourth-degree felonies. The Medicaid-fraud offense was punishable as a fourth-degree felony. The trial court's sentence included an order that each prison term be served consecutively, for an aggregate prison term of 19½ years.

{¶2} Alexander was sentenced after the effective date of the revisions to the felony sentencing statutes found in Am.Sub.H.B. No. 86. Because the trial court's findings to support consecutive sentences are amply demonstrated in the record, because the court considered the seriousness and the likelihood of recidivism in reaching its sentencing decision, and because it did not otherwise abuse its discretion in imposing sentence, we affirm.

## I. The Sentencing Hearing

{¶3} In exchange for Alexander's pleas of guilty, the state dismissed 26 other serious felony charges. The trial court accepted her pleas, found her guilty of each remaining offense, and continued the matter for the preparation of a presentence investigation.

{¶4} At a sentencing hearing conducted on November 30, 2011, the trial court indicated that it had reviewed the presentence investigation, which included evidence that Alexander had been convicted of welfare theft in Seattle in 1992 and had been convicted of falsification in Hamilton County in 1979. The court heard the statements of Deb Lyle, a

representative of the group home. Lyle noted that the victims, disabled women from 39 to 67 years of age, had trusted and relied on Alexander for over 14 years. Alexander's duties had included overseeing the financial arrangements made for residents of the group home. The victims had "perceived her as a parent figure." Yet, Lyle explained how, over a period of years, Alexander had "stole[n] their money, lied to them, broke[n] promises and betrayed their trust." She recounted how Alexander had stolen the women's retirement and disability payments and had collected funds for "bogus cemetery plots." Lyle stated that, even after being terminated by the group home, Alexander had forged documents and had lied to her former employer and to state agencies to obtain the state-retirement payments of a disabled victim, leaving the home to charge the state and county for the victim's care.

{¶5}    The court also heard the statement of Holly Mott, an investigator for Hamilton County's developmental-disabilities agency. Mott described Alexander's actions as "one of the most tragic and sad cases" and noted that "Alexander is one of the most manipulative and calculating perpetrators" to be investigated. Mott provided more detail regarding Alexander's schemes and the tremendous impact they had on the defenseless victims. According to Mott, Alexander had capitalized on the victims' beliefs that Alexander was "a special person that they could trust." She also noted that Alexander had lied to investigators when first confronted by allegations of her malfeasance at the group home. The court then received the comments of an Ohio assistant attorney general and police detectives who recounted more details of Alexander's theft and fraud activities.

{¶6}    After entertaining the arguments of counsel, the trial court then explained to Alexander:

> [The victim-impact statements], boy, they really nailed it
> on the head just how I felt. And I was going to quote some of
> them but they did it enough, and so I'll just move on.

What I do have to say to you, I'm the Mental Health Court judge, so I have - - well, what you've done is just so disturbing and reprehensible to me, to take advantage and prey upon the most vulnerable, the most trusting, the most defenseless, the most assailable members of society is just wrong. It's more than wrong.

\* \* \*

You, ma'am, are never to work with any elderly or disabled individuals ever again.

\* \* \*

The sentence I have imposed - - I'm not maxing you out because you did step forward and take responsibility and pled to this offense.

{¶7} The record also reflects that the trial court filled out and journalized sentencing-findings worksheets for these offenses. The trial court noted on the worksheets that it had considered the seriousness and recidivism factors under R.C. 2929.12 and had made the findings for imposing consecutive sentences under R.C. 2929.14(C). The trial court also journalized two separate judgment entries imposing the sentences of incarceration, imposing costs, ordering restitution, and notifying Alexander of her postrelease-control obligations. These consolidated appeals followed.

## II. The Two-Step Review of Felony Sentences

{¶8} In two interrelated assignments of error, Alexander argues that the trial court abused its discretion in ordering the sentences to be served consecutively, and that

the trial court's sentence was contrary to law because the court had failed to apply and consider the seriousness and recidivism factors of R.C. 2929.12. We disagree.

{¶9} The Ohio Supreme Court has identified a two-step process for appellate review of felony sentences. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14; *see also State v. Love*, 194 Ohio App.3d 16, 2011-Ohio-2224, 954 N.E.2d 202, ¶ 13 (1st Dist.). First we must determine whether Alexander's sentences of imprisonment were contrary to law. *Kalish* at ¶ 14. Then, if the sentences were not contrary to law, we must review them to determine whether the trial court abused its discretion in selecting sentences within the range permitted by statute. *Id.* at ¶ 17.

### A. The First Step—Has the Trial Court Adhered to the Applicable Statutes?

{¶10} Under the first step of the *Kalish* inquiry, the reviewing "court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence." *Id.* at ¶ 14. We conduct this inquiry to determine only whether the sentences imposed were "clearly and convincingly contrary to law, [under] the standard found in R.C. 2953.08(G)." *Id.* at ¶ 14.

{¶11} For example, R.C. 2929.14(A) imposes a statutory requirement that a trial court must adhere to when imposing sentence: the term of imprisonment must be within the range provided by statute. We have held that a trial court failed to adhere to the applicable sentencing statute when it imposed an 18-month prison term for an offense for which the maximum prison term was 12 months. *State v. Andrew*, 1st Dist. No. C-110141, 2012-Ohio-1731, ¶ 8, citing *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 15. Since that sentence was outside the permissible statutory range, it was clearly and convincingly contrary to law. *Id.* And we vacated the sentence and remanded the matter to the trial court for resentencing. *Id.* at ¶ 10.

{¶12} Alexander concedes that each prison term imposed was within the range provided by statute. But she contests whether the trial court erred in ordering the sentences to be served consecutively.

{¶13} ***Findings are required to impose consecutive sentences.*** The enactment of Am.Sub.H.B. No. 86 has established an additional requirement that trial courts must adhere to when imposing consecutive sentences. The General Assembly has "revived the requirement that trial courts make findings before imposing consecutive sentences in R.C. 2929.14(C)." *State v. Jones*, 1st Dist. No. C-110603, 2012-Ohio-2075, ¶ 17; *see also State v. Hites*, 3rd Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 11; *State v. Bonner*, 8th Dist. No. 97747, 2012-Ohio-2931, ¶ 5 ("The revisions * * * now require a trial court to make specific findings when imposing consecutive sentences."); *State v. Sullivan*, 10th Dist. No. 11AP-414, 2012-Ohio-2737, ¶ 24.

{¶14} Our determination of whether a trial court has adhered to the applicable requirements of R.C. 2929.14(C)(4) in imposing consecutive sentences is also subject to review under the first prong of *Kalish* and under R.C. 2953.08(G)(2). *See Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 14. We do not apply the abuse-of-discretion standard urged by Alexander. Rather, a reviewing court may vacate consecutive sentences only if "it clearly and convincingly finds" either that the record does not support the trial court's R.C. 2929.14(C)(4) sentencing findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

{¶15} R.C. 2929.14(C)(4) now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must "find" that consecutive sentencing is necessary to protect the public from future crime or to punish the offender. Next, the trial court must "find" that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Finally, the trial court must "find" that at least one of the following applies: (1) the offender committed one or more of the multiple

offenses while awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, R.C. 2929.17, or R.C. 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶16} In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). A trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455 *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999); *see also State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455 *11 (Nov. 24, 2000).

{¶17} Because a trial court speaks only through its journal, we have long approved the use of a sentencing-findings worksheet to document that the trial court has made the required findings. *E.g., State v. Phillips*, 1st Dist. No. C-960898, 1997 Ohio App. LEXIS 2615 (June 18, 1997); *see also State v. Meister*, 76 Ohio App.3d 15, 19, 600 N.E.2d 1103 (1st Dist.1991). Use of the sentencing-findings worksheet ensures that the trial court has adhered to the applicable statutory mandate. *See* R.C. 2929.14(C); *see also Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 15.

And by documenting the findings in the court's journal, the use of a worksheet also ensures meaningful review of the trial court's sentencing decisions.

{¶18} The consecutive-sentence findings required by R.C. 2929.14(C) are not the same as those required by former R.C. 2929.19(B)(2), which provided that the trial court "shall impose a sentence and shall make a finding that *gives its reasons* for selecting the sentence * * * (c) If it imposes consecutive sentences." (Emphasis added.) *See State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 14-16. In 2003, the Ohio Supreme Court held that the requirement that a trial court give its reasons for selecting consecutive sentences was "separate and distinct from the duty to make the findings," and it imposed an obligation on trial courts to articulate the reasons supporting their findings at the sentencing hearing. *Id.* at ¶ 19-20. The trial court's obligation to "give its reasons" is now gone from the sentencing statutes. Gone with it, we hold, is the requirement that the trial court articulate and justify its findings at the sentencing hearing. A trial court is free to do so, of course. But where, as here, there is no statutory requirement that the trial court articulate its reasons, it does not commit reversible error if it fails to do so, as long as it has made the required findings. *See Phillips,* 1st Dist. No. C-960898, 1997 Ohio App. LEXIS 2615.

{¶19} Here, the trial court carefully and fully complied with the mandates of R.C. 2929.14(C) to make sentencing findings. The trial court employed sentencing-findings worksheets and journalized them on the date of the sentencing hearing. For each case number, it selected the appropriate statutory criteria for imposing consecutive sentences. In both cases, it noted on the face of the worksheets that consecutive sentences were necessary to protect the public and to punish the offender, and that they were not disproportionate to the seriousness of Alexander's conduct and the danger she posed to the public. Finally, the trial court found in both cases that Alexander had committed one or more of the multiple offenses while awaiting trial,

and that the harm caused by them was so great or unusual that no single prison term would adequately reflect the seriousness of her conduct.

{¶20} The record demonstrates that the trial court adhered to all applicable rules and statutes in imposing consecutive sentences. *See Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 14. And the record of Alexander's misdeeds amply supports the trial court's R.C. 2929.14(C)(4) sentencing findings. *See* R.C. 2953.08(G)(2). Alexander had used her position as the manager of a group home for elderly and disabled adults to illegally obtain tens of thousands of dollars from multiple victims in her care. While she was awaiting trial on these charges, Alexander was charged with and ultimately pled guilty to Medicaid fraud. Alexander had forged documents and had lied to her employer and to state agencies. With the victim's retirement payments illegally diverted to Alexander's account, the group home, believing that the retirement payments had ceased, had billed state and county agencies for over $25,000 to maintain the victim's care.

{¶21} We, therefore, conclude that the trial court complied with the dictates of the newly amended R.C. 2929.14(C)(4) and made all the findings required to support the imposition of consecutive sentences, and that those findings were supported in the record.

{¶22} *The trial court considered the seriousness and recidivism factors.* R.C. 2929.12 provides another statutory requirement that the trial court must follow. Alexander next argues that the trial court failed to apply and consider the seriousness and recidivism factors of that statute. Again, we disagree.

{¶23} R.C. 2929.12 states that in exercising its discretion to determine the most effective way to comply with the purposes and principles of felony sentencing, the trial court shall "consider" the factors relating to the seriousness of the offender's conduct and the factors relating to the likelihood of the offender's recidivism. Along with R.C. 2929.11, which lists the purposes and principles of felony sentencing, R.C.

9

2929.12 "serve[s] as an overarching guide for trial judges to consider in fashioning an appropriate sentence." *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 17.

{¶24} But as the Ohio Supreme Court has noted, R.C. 2929.11 and 2929.12 are "not fact-finding statutes like R.C. 2929.14." *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 17. R.C. 2929.12 requires only that a trial court "consider" the factors. Unlike R.C. 2929.14(C), it does not require the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000); *see also State v. Luecke*, 11th Dist. Nos. 2011-P-0085 and 2011-P-0104, 2012-Ohio-3032, ¶ 10. Thus, we would presume, even from a silent record, that the trial court had considered the R.C. 2929.12 factors, unless an appellant could demonstrate affirmatively that the court had failed to do so. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *see also Love*, 194 Ohio App.3d 16, 2011-Ohio-2224, 954 N.E.2d 202, at ¶ 14.

{¶25} Here, moreover, it is abundantly clear from the sentencing-findings worksheets and from the trial court's remarks at the sentencing hearing that the court considered a number of factors relating to the seriousness of Alexander's conduct and to the likelihood of her offending in the future. The trial court noted at sentencing that Alexander had preyed upon elderly and disabled victims. *See* R.C. 2929.12(B)(1) (injury suffered exacerbated by victim's age or physical or mental condition). The worksheets also reflect that the trial court considered the harm inflicted on the victims. The trial court considered that Alexander's position as a caretaker, obligating her to prevent exactly these kinds of offenses, was used to facilitate the offenses, as was Alexander's relationship with the victims. *See* R.C. 2929.12(B)(1), 2929.12(B)(2), 2929.12(B)(4), 2929.12(B)(5), and 2929.12(B)(6). The court also

considered that Alexander had showed no genuine remorse for her crimes. *See* R.C. 2929.12(D)(5).

{¶26} Each of these factors is amply supported in the record. Alexander had entered multiple pleas of guilty to charges of theft from elderly or disabled adults. *See* R.C. 2913.02(A)(2). She had used her position as the manager of a group home for elderly and disabled adults to illegally obtain funds from those in her care. And she had entered a plea of guilty to generating fraudulent billing statements to state agencies administering the Medicaid program. We, therefore, conclude that the trial court adhered to the statutory requirements of R.C. 2929.12 in imposing sentence.

### B. The Second Step—Did the Trial Court Abuse Its Discretion in Selecting Sentences Within the Ranges Permitted by Statute?

{¶27} Since we have determined that the sentences imposed were not contrary to law, we now proceed to the second step of our sentencing analysis. We must determine whether the trial court actually abused its discretion in imposing sentences permitted by statute. *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 17 and 19. Thus, we will not reverse the trial court's sentencing decisions unless the court exhibited an attitude that was "unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). In applying this standard, a reviewing court "is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990); *see also State v. Morris*, ___ Ohio St.3d ___, 2012-Ohio-2407, ___ N.E.2d ___, ¶ 14. Rather, if the trial court's exercise of its discretion exhibited a "sound reasoning process" that would support its decision, a reviewing court will not disturb that determination. *Morris* at ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶28} The trial court was well acquainted with the facts surrounding these crimes. It had reviewed the presentence investigation, the statements of investigators, and the arguments of counsel. In light of the seriousness of Alexander's conduct, preying upon vulnerable and trusting victims for financial gain, we find that the trial court exhibited a sound reasoning process in imposing consecutive prison terms totaling 19½ years. The trial court did not abuse its discretion. The first and second assignments of error are overruled.

{¶29} Therefore, the judgments of the trial court are affirmed.

Judgments affirmed.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.