[Cite as *State v. Austin*, 2012-Ohio-4232.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110804 |
| | | TRIAL NO. B-1100995 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| TERRY AUSTIN, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  September 19, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**J. HOWARD SUNDERMANN, Presiding Judge.**

{¶1} Defendant-appellant Terry Austin appeals his convictions for possession of cocaine and two counts of rape with repeat violent offender ("RVO") and sexually violent predator ("SVP") specifications. In five assignments of error, he argues that his rape convictions and the SVP specifications are against the weight and the sufficiency of the evidence; the trial court erred by denying his motions for a judgment of acquittal; the trial court imposed a sentence that was contrary to law; and the trial court prejudiced his defense by refusing to permit his sister's testimony at trial. Finding none of his arguments meritorious, we affirm his convictions.

### *I. Trial Court Proceedings*

{¶2} Austin was arrested and charged with one count of aggravated burglary, two counts of rape, and one count of possession of cocaine. The aggravated-burglary and rape charges included a RVO specification. Each rape charge also included a SVP specification. Austin elected to have the RVO and the SVP specifications tried to the court.

{¶3} At a jury trial on the underlying charges, the state presented evidence that during the early morning hours of February 12, 2011, C.H. had been sleeping in her bed, when she was awakened by the sound of her apartment door opening. She saw Austin, whom she knew from the neighborhood, standing inside her apartment holding a puppy. Austin knew C.H. had her own dog as he had previously played with it in her apartment. C.H. asked Austin to leave several times. He offered her $10, a cellular phone, and a $50 piece of crack cocaine. When C.H. again asked Austin to leave, Austin became angry, telling her that if she didn't give him what he wanted, he was going to bash her brains in. C.H. thought he was joking at first, and was just insinuating that he wanted sex. So she continued to tell him to leave.

{¶4}     Austin eventually picked up a baseball bat that was in the apartment. He held it up to C.H.'s dog and threatened to kill it.  When C.H. stood up and attempted to take the bat from Austin, he punched her in the mouth, causing C.H. to fall against her television set.  C.H. then started looking for her phone, but Austin had already taken it.  Austin held the bat up over C.H. and told her to remove her clothes.  C.H., who feared for her life, submitted to vaginal intercourse with Austin.  C.H. testified that Austin penetrated her vagina for twenty-five minutes before ejaculating.  Austin then forced C.H. into the bathroom and used a washcloth to clean himself.  He also made C.H. clean herself with a different washcloth.  Austin then demanded anal intercourse.  When C.H. refused, Austin, still holding the baseball bat at his side, forced C.H. to have vaginal intercourse with him again.  Austin eventually fell asleep and C.H. was able to get her phone from his pocket.  She put on some clothes and went into the hallway to call the police.

{¶5}     When Cincinnati Police Officers Dan Hoderlein and John Homan arrived at 6:30 a.m., they found Austin asleep on C.H.'s bed with his pants down around his ankles. Austin first told police that he did not have sex with C.H., but he later admitted to having sex with her.  He denied raping her.  Officer Hoderlein searched Austin and found a crack cocaine rock, $10, and a cellular phone.  Detective Jeff Smallwood photographed the apartment and collected evidence, which included the two washcloths, a beer can, bed sheets, and a baseball bat.

{¶6}     Detective Jim Wigginton, who was assigned to the Personal Crimes Unit of the Cincinnati Police Department, and Officer Charlene Morton interviewed both C.H. and Austin.  They interviewed C.H. first.   C.H. was then transported to University Hospital.   Michelle Wilcox, a sexual assault nurse examiner at University Hospital, examined C.H. and prepared a report.  Wilcox noted that C.H. had a swollen and bruised

lower lip that appeared to be recently injured. She used a rape kit and followed the protocol to collect evidence. She took various swabs and pictures. She testified that the examination took roughly four hours.

{¶7} In the meantime, Detective Wigginton and Officer Morton were interviewing Austin. They recorded the interview, which was played for the jury. Detective Wigginton testified that he also took swabs from Austin's penis. Although he submitted the rape kit to the lab and later submitted the washcloths, Detective Wigginton forgot about the penile swabs until testifying at trial. The penile swabs were still in the police property room. They were immediately submitted to the lab for analysis at Austin's request.

{¶8} Kelly Ashton-Hand, a DNA analyst and serologist with the Hamilton County Coroner's lab, analyzed the washcloths, the rape kit, and the penile swabs. She prepared reports summarizing her findings. From the vaginal swabs in the rape kit, Ashton-Hand was able to obtain a DNA profile that matched C.H. She also identified the presence of semen, but there was not enough to obtain a DNA profile. A swab taken from the front of C.H.'s neck was identified as saliva, and the DNA profile matched Austin. The washcloths were also analyzed and the DNA profiles obtained were mixtures from which Austin could not be excluded as a contributor. Ashton-Hand later analyzed the penile swabs and found the presence of DNA that matched C.H.'s profile.

{¶9} Austin presented testimony from C.H.'s neighbor, Hoodia Collins. Collins had lived in the same apartment with C.H. for eight and a half years. Collins testified that C.H. often "hung out" with Austin, and that on the day of the alleged rape C.H. had stated that she was going to call Austin and ask him to bring her some beer and cigarettes. C.H., who was moving from her apartment, had also asked Collins for money to help with her moving expenses. Collins further testified that she, not C.H., had let the

4

police into the apartment building, that she had walked into C.H.'s apartment, and that C.H. had told her "that guy [Austin] did not have nothing but $50." To rebut Collins's testimony, the state presented C.H.'s 911 call.

{¶10} The jury acquitted Austin of aggravated burglary, but convicted him of the two counts of rape and possession of cocaine. At a subsequent trial on the SVP and the RVO specifications, the state introduced a certified copy of Austin's 1989 conviction for rape. The trial court found Austin guilty of the SVP and the RVO specifications. After concluding that Austin did not meet the statutory criteria for the RVO sentencing enhancement, it imposed only the sentencing enhancement for the SVP specification. Pursuant to R.C. 2971.03(A)(3)(d)(ii), the trial court sentenced Austin to 15 years to life for each rape offense. It sentenced Austin to six months for the possession of cocaine offense. The trial court ordered that all the sentences be served concurrently. The trial court also explained Austin's duty to register as a Tier III sex offender.

## II. Sufficiency and Weight of the Evidence

{¶11} In his first, second, and third assignments of error, Austin argues that his rape convictions and the SVP specifications were based on insufficient evidence and were against the manifest weight of the evidence, and that the trial court erred by denying his Crim.R. 29 motions for judgments of acquittal.

{¶12} When reviewing a trial court's denial of a Crim.R. 29 motion, this court must determine "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *See State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. To reverse a conviction for insufficient evidence, we must be persuaded, after viewing the evidence in the light most favorable to the state, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*See State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992). To reverse a conviction on the manifest weight of the evidence, we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

### A. Rape Offenses

{¶13} Austin first argues that the state presented insufficient evidence for the jury to find him guilty of the two counts of rape. R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶14} C.H. testified that she was asleep and awoke to discover Austin in her apartment. When C.H. asked Austin to leave and indicated that she was not interested in having sex with him, Austin threatened her and her dog with a baseball bat. When C.H. attempted to take the bat from him, Austin punched C.H. in the mouth. He then held the bat over her head while she undressed. Austin put his penis into her vagina on two separate occasions. The DNA mixture found on the washcloths revealed a profile from which Austin could not be excluded, and the DNA found on C.H.'s neck matched Austin's profile. C.H.'s DNA was also found on swabs taken from Austin's penis. When the police arrived at C.H.'s apartment, they found Austin passed out in C.H.'s bed with his pants down around his ankles. Because this evidence was sufficient to establish each element of rape, the trial court properly denied Austin's Crim.R. 29 motions. This evidence, moreover, was sufficient for the jury to find Austin guilty of the two rape offenses.

{¶15}   While Austin denied raping C.H. and presented testimony from C.H.'s neighbor, Hoodia Collins, that C.H. had discussed inviting Austin to her apartment that day to bring her cigarettes and to ask him for money, and that C.H. had told her that she had taken $50 from Austin after the alleged rape, the credibility of these witnesses' testimony was for the jury to determine.   After reviewing the record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Austin's convictions for rape and order a new trial.

### B. Sexually Violent Predator Specifications

{¶16}   Austin next challenges the sufficiency of the evidence adduced for the SVP specifications.   He argues that the trial court improperly relied on his 1989 rape conviction to support the specifications.   His argument is premised upon the Ohio Supreme Court's decision in *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283.

{¶17}   In *Smith*, the Supreme Court was concerned with interpreting a former version of R.C. 2971.01(H)(1), which defined a SVP  as "a person *who has been convicted of or pleaded guilty to committing, on or after January 1, 1997, a sexually violent offense* and is likely to engage in the future in one or more sexually violent offenses." (Emphasis added.)   The Supreme Court held that a "[c]onviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1) if the conduct leading to the conviction and the  * * * specification are charged in the same indictment."   *Id.* at syllabus.   Rather, "R.C. 2971.01(H)(1) requires that only a conviction that existed prior to the indictment of the underlying offense can be used to support the specification." *Id.* at ¶ 1.

{¶18}   In response to *Smith*, the legislature amended R.C. 2971.01(H)(1) to its current version, which defines a SVP as a "person who, on or after January 1, 1997,

*commits* a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." (Emphasis added.) Thus, the statute now provides that a sexually violent offense in the current indictment can be the basis for the SVP specification. *See State v. Green*, 8th Dist. No. 96966, 2012-Ohio-1941, ¶ 23-25; *State v. Mitchell*, 8th Dist. No. 9487, 2010-Ohio-5775, ¶ 21-30; *State v. Boynton*, 8th Dist. No. 93784, 2010-Ohio-4670, ¶ 2-6; *State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311, ¶ 27-32; *State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, ¶ 50.

{¶19} Austin argues that his 1989 rape conviction cannot be used as the predicate offense for the SVP specification, because the offense was committed before 1997. But the record reflects that the trial court used Austin's commissions of rape in the current indictment to satisfy the first part of R.C. 2971.01(H)(1). Because the current version of R.C. 2971.01(H)(1) permits the trial court to rely on Austin's commission of those offenses to satisfy the first part of the statutory definition of a SVP, we find Austin's argument meritless.

{¶20} With respect to the second part of the definition—Austin's likelihood of engaging in sexually violent offenses in the future—R.C. 2971.01(H)(2) provides that

"[f]or purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from an offense committed at the

same time are one conviction, and a conviction set aside pursuant to the law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile development years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

{¶21} In making its finding that Austin was likely to engage in sexually violent offenses in the future, the trial court relied upon the facts of the current offense. The trial court further stated that Austin had served 18 years in prison for the 1989 rape; that Austin was on parole for the 1989 rape conviction; and that he was staying at a sexual offender halfway house as required by the department of corrections when he committed the current rape offenses. On this record, sufficient evidence supported the trial court's finding that Austin is likely to engage in the future in one or more sexually violent offenses, and that, he is, therefore, a SVP. Furthermore, we cannot conclude that the trial court's findings were against the manifest weight of the evidence.

{¶22} Having concluded that the trial court properly denied Austin's Crim.R. 29 motions, and that his rape convictions and the SVP specifications were supported by

sufficient evidence and were not against the manifest weight of the evidence, we overrule his first, second, and third assignments of error.

### III. Prison Sentence

{¶23}   In his fourth assignment of error, Austin argues that his 15-year-to-life prison sentence was erroneous and excessive.

{¶24}   When reviewing felony sentences, we engage in a two part analysis. We first determine whether the sentences are contrary to law.  *See State v. Alexander*, 1st Dist. Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 9.   If the sentences are not contrary to law, "we must review them to determine whether the trial court abused its discretion in selecting sentences within the range permitted by statute." *Id.*

{¶25}   Austin argues that his aggregate sentence is contrary to law because he should not have been found guilty of the SVP specifications.  Thus, he argues that the maximum prison sentence the trial court could have imposed for each rape offense was ten years.  But we have concluded in our disposition of Austin's first assignment of error that sufficient evidence supports the trial court's findings on the SVP specifications.

{¶26}   Because Austin was found guilty of two counts of rape under R.C. 2907.02(A)(2), each with a SVP specification, the trial court was required to "impose an indefinite prison term consisting of a minimum term fixed by the court that is not less than ten years and a maximum term of life imprisonment" on each count.  *See* R.C. 2971.01(A)(3)(d)(iii).  Austin's sentence of 15 years to life for each of the rape offenses, while not the minimum sentence the court could impose, fell within the statutory range, and, thus, was not contrary to law.

{¶27}   Nor can we conclude that the trial court abused its discretion in imposing the sentences based upon the brutal nature of the rape offenses, Austin's criminal record, and the fact Austin had committed the rape offenses while he was still living in a halfway house after having been released from a significant prison term for a 1989 rape conviction.   We, therefore, overrule his fourth assignment of error.

### IV.  Trial Court's Exclusion of Testimony From Austin's Sister

{¶28}   In his fifth assignment of error, Austin argues the trial court abused its discretion when it prohibited his sister from testifying at trial.  He argues that the trial court should have remedied the matter with a brief continuance instead of excluding her testimony.

{¶29}   Broad discretion is afforded to the trial court in regulating discovery and in determining the appropriate sanctions for violations. In exercising their discretion, trial courts must inquire into the circumstances surrounding the violation and impose the least severe sanction.  *See City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus.

{¶30}   At the close of the state's case, defense counsel sought to present Austin's sister as a witness in his defense. Counsel explained to the trial court that he was unaware that his client's sister would testify that she received a call from C.H. on the night of the offense inviting her over to party and that C.H. had also called to invite Austin over to party. The state objected, arguing there was not enough time for it to subpoena the witness's phone records.

{¶31}   Crim.R. 16(A) provides that "[a]ll duties and remedies are subject to a standard of due diligence, apply to the defense and prosecution equally, and are intended to be reciprocal."  Here, the trial court inquired into the circumstances of

the defense's late notice, asking how with due diligence it was not discovered until the first day of trial that the defendant's sister was friends with C.H. and had had a telephone conversation with her on the night of the offense. The trial court found that allowing the witness to testify would be prejudicial to the state because it would not be able to cross-examine the witness with phone records due to such late notice.

{¶32} We cannot conclude the trial court abused its discretion by failing to grant Austin's counsel a "brief continuance" to remedy the situation when the trial court had already continued the trial in progress for two days because Austin had wanted the penile swabs analyzed. We, therefore, overrule his fifth assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM** and **DINKELACKER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.