[Cite as *State v. Wimbush*, 2016-Ohio-7567.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Sheila G. Farmer,, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16CA14 |
| THOMAS E. WIMBUSH | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal appeal from the Richland County
                                Court of Common Pleas, Case No. 15-CR-
                                0452

JUDGMENT:                       Affirmed in part, Reversed in part and
                                Remanded


DATE OF JUDGMENT ENTRY:         October 28, 2016


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DANIEL ROGERS                           JEFFEREY STIFFLER
Assistant Prosecuting Attorney          21 North Walnut Street
Richland County Prosecutor's Office     Mansfield, OH  44902
38 S. Park Street
Mansfield, OH 44902

*Gwin, J.,*

**{¶1}** Appellant, Thomas Wimbush ["Wimbush"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas for two counts of drug trafficking, in violation of R.C. 2925.03(A)(1) &(C)(4)(b), Count One being a felony of the fourth degree upon the jury's verdict finding that the offense occurred within the vicinity of a juvenile, and Count Two being a felony of the fifth degree.

*Facts and Procedural History*

**{¶2}** On June 5 2014, Brian Boroski, a confidential informant with Metrich Enforcement Unit ["MEU"] since 1998, advised MEU detectives that he could execute a controlled buy of cocaine from Wimbush. Boroski reported to MEU and completed a controlled phone call with Wimbush. Boroski and Wimbush arranged for Boroski to purchase cocaine at Church's Chicken at 276 Park Avenue West in Mansfield.

**{¶3}** Following the controlled phone call, MEU Detective Blust searched Boroski's person and vehicle and confirmed that Boroski did not possess any contraband. MEU Detectives equipped Boroski with video and audio recording equipment and provided Boroski with $100.00 to purchase the drugs.

**{¶4}** Boroski proceeded to Church's Chicken driving his own vehicle. MEU Detectives Wheeler and Schivinski following in a second vehicle and MEU Detective Blust and Sergeant Petrycki followed in a third vehicle. Boroski parked in the parking lot of Church's Chicken. Detectives Wheeler and Schivinski parked in the parking lot of MVP Bar and Lounge across from Church's Chicken in order to observe the controlled buy. Detective Blust and Sergeant Petrycki remained mobile in the area around Church's Chicken in case of an emergency.

{¶5} Boroski made contact with Wimbush, who arrived at Church's Chicken in a Cadillac. Both Boroski and Detective Wheeler observed a small child sitting in the front passenger seat of Wimbush's Cadillac.

{¶6} Wimbush exited the Cadillac and provided Boroski with cocaine wrapped in cellophane in exchange for $100.00. After a brief discussion regarding the amount and value of the cocaine, Boroski agreed to owe Wimbush at their next sale.

{¶7} Boroski and the MEU officers returned to MEU. Detective Wheeler de-activated and removed Boroski's recording equipment. Detective Blust searched Boroski's person and vehicle and confirmed Boroski did not possess any contraband. Detective Wheeler collected the cocaine wrapped in cellophane and sent it to the MPD Crime Lab for testing. Detective Blust created a photo array including Wimbush's photograph. Boroski viewed the photo array and identified Wimbush as the person who sold him cocaine.

{¶8} Anthony Tambasco from the Mansfield Police Department Crime Lab completed a Report of Analysis confirming the substance in cellophane sold to Boroski by Wimbush on June 5, 2014 as .95 grams of cocaine.

{¶9} On June 17, 2014, Boroski reported to MEU and conducted several controlled phone calls with Wimbush. During the calls, Boroski and Wimbush discussed the controlled buy from June 5, 2014 and the money owed by Boroski. Wimbush and Boroski eventually arranged for Boroski to pay $50.00 owed from the previous controlled buy on June 5, 2014 and purchase an additional $100.00 worth of "stuff," from Wimbush. Boroski and Wimbush arranged for this sale to once again occur at Church's Chicken. At

the end of the controlled calls, Wimbush advised Boroski that he would be at Church's Chicken in ten to fifteen minutes.

{¶10} Detectives searched Boroski's person and vehicle and confirmed that Boroski did not possess any contraband. Detective Blust equipped Boroski with video and audio recording equipment and provided Boroski with $150 to execute the controlled buy from Wimbush. Boroski then proceeded to Church's Chicken, with Detectives Blust and Rodriguez following in a separate vehicle. Boroski parked in the parking lot of Church's Chicken. Detectives Blust and Rodriguez parked in the parking lot of MVP Bar and Lounge in order to observe the controlled buy.

{¶11} Approximately forty-five minutes after the conclusion of the controlled phone call, Wimbush arrived at Church's Chicken. Wimbush, who did not have any drugs with him, asked Boroski to take a ride with him. Boroski declined. Wimbush told Boroski that Wimbush's girlfriend was bringing the "stuff' from Ontario. Wimbush asked Boroski to follow him to Joe & Mary's, a convenient store located on Sturges Avenue, to pick up the "stuff' from Wimbush's girlfriend. Boroski told Wimbush he would follow him to Joe & Mary's.

{¶12} After Wimbush left Church's Chicken, Boroski contacted Detective Blust. Detective Blust advised Boroski not to go to Joe & Mary's out of concern for Boroski's safety. Boroski and Detective Blust met at St. Peter's Church, where Detective Blust called off the controlled sale and de-activated Boroski's recording equipment. Boroski and Detectives Blust and Rodriguez then returned to MEU.

{¶13} Upon returning to MEU, Boroski completed another controlled phone call with Wimbush. During this final controlled call, Wimbush became agitated about Boroski

owing him money and claimed that Boroski owed him $100.00 from the controlled buy on June 5, 2014 rather than $50.

{¶14} On February 19, 2016, the jury convicted Wimbush on both counts of the indictment. The trial court immediately sentenced Wimbush to prison terms of eighteen months on Count 1 and one year on Count 2, with those terms to be served consecutively. The trial court also imposed three years of discretionary post-release control and imposed $40 in restitution to be paid to the Mansfield Police Department Crime Lab.

*Assignments of Error*

{¶15} Wimbush raises three assignments of error,

{¶16} "I. THE DEFENDANT'S CONVICTIONS FOR DRUG TRAFFICKING (TWO COUNTS) WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SUSTAIN SAID CONVICTIONS.

{¶17} "II. THE DEFENDANT'S CONVICTIONS FOR DRUG TRAFFICKING (2 COUNTS) WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶18} "III. THE CONSECUTIVE SENTENCES IMPOSED BY THE TRIAL COURT WAS CONTRARY TO LAW."

I & II.

{¶19} In his first assignment of error, Wimbush challenges the sufficiency of the evidence. In his second assignment of error, Wimbush contends his conviction is against the manifest weight of the evidence produced at trial.

{¶20} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶21} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶22} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶23} To find Wimbush guilty of trafficking in the vicinity of a juvenile, the trier of fact would need to find that Wimbush knowingly sold or offered to sell a controlled substance in the vicinity of a juvenile. R.C. 2925.03(A)(1) &(C)(4)(b).

{¶24} Wimbush concedes he sold cocaine to Boroski on June 5, 2014. He argues only that the evidence concerning the presence of a juvenile at that time is suspect.

{¶25} As used in the Revised Code chapter defining drug offenses, "juvenile" means a person under 18 years of age. R.C. 2925.01(N). An offense is committed in the

vicinity of a juvenile if the offender commits the offense within 100 feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within 100 feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense. R.C. 2925.01(BB).

{¶26} In the case at bar, Boroski testified that he observed a small black child under the age of 10 years old in Wimbush's car on June 5, 2014. 1T. at 122; 148. Detective Perry Wheeler testified that he observed through binoculars a male juvenile between the age of 9 and 11 years old in Wimbush's car. 1T. at 160; 165.

{¶27} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that a juvenile was present in Wimbush's car on June 5, 2014 when Wimbush purchased cocaine from Boroski.

{¶28} We hold, therefore, that the state met its burden of production regarding each element of the crime of trafficking in the vicinity of a juvenile and, accordingly, there was sufficient evidence to support Wimbush's conviction.

{¶29} Concerning the June 17, 2014 transaction, Wimbush argues that there was never any mention of cocaine; rather the deal was for "stuff."

{¶30} It is well-settled in Ohio that a person may be convicted of a trafficking offense under R.C. 2925.03(A)(1) based on evidence establishing that he knowingly offered to sell a controlled substance, even in cases where (1) the drug offered actually was counterfeit; or (2) the sale was not consummated and the substance was never

recovered.  *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, ¶ 9.

**{¶31}**  In the case at bar, Boroski testified that "stuff" referred to "cocaine.  1T. at 132.  Boroski testified that on June 17, 2014 he expected to purchase cocaine from Wimbush just as he had on June 5, 2014.  1T. at 142.  Boroski testified that he was going to meet Wimbush to purchase cocaine.  1T. at 151.

**{¶32}**  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Wimbush's offered to sell Boroski cocaine on June 17, 2014.

**{¶33}**  We hold, therefore, that the state met its burden of production regarding each element of the crime of trafficking and, accordingly, there was sufficient evidence to support Wimbush's conviction.

**{¶34}**  As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses.  Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment.  *Cross Truck v. Jeffries*, 5th Dist. Stark No.  CA–5758, 1982 WL 2911(Feb. 10, 1982).  Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978).  The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.  * * *.'"  *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.

2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).  Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses.  *See, e.g., In re Brown*, 9th Dist. No.  21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶35}  Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'"  *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶36}  The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118.  *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶37}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

**{¶38}** In the case at bar, the jury heard the witnesses, heard the audio recordings, viewed the video of the transactions and heard Wimbush's arguments.

**{¶39}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Wimbush of the charges.

{¶40} Based upon the foregoing and the entire record in this matter, we find Wimbush's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Wimbush and his arguments. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Wimbush's guilt.

{¶41} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each crime. Wimbush's first and second assignments of error are overruled.

III.

{¶42} In his third assignment of error, Wimbush challenges the imposition of the consecutive terms on the ground that the trial court failed to make the findings required by R.C. 2929.14(C)(4).

{¶43} The two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124 no longer applies to appellate review of felony sentences. We now review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum,* __Ohio St.3d__, 2016–Ohio–1002, __N.E.3d ___, ¶22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or

(C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶28.

**{¶44}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

**{¶45}** In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶23. This statute requires the trial court to undertake a three-part analysis. *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

**{¶46}** R.C. 2929.14(C)(4) provides,

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish **665 the offender and that consecutive sentences are not disproportionate to the

seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶47} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two

or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

{¶**48**}  Recently, in *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, syllabus, the Supreme Court of Ohio stated that:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.

{¶**49**}  Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Bonnell*, ¶29.  "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."  Id.  A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law.  *Bonnell,* ¶34.  The findings required by R.C. 2929.14(C)(4) must be made at the sentencing hearing and included in the sentencing entry.  Id. at the syllabus.  However, a  trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court.  *Bonnell,* ¶30.

**{¶50}** In this case, the record does not support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**{¶51}** In the case at bar, the trial court stated,

THE COURT: In this particular case we have one sale of cocaine, and a second offer to sell. In terms of the factors I have to weigh, the offense was committed as part of an organized criminal activity, drug trafficking.

In terms of recidivism being more likely, the offender has a history of criminal convictions which we just heard here, particularly having to do with drugs. He's not responded favorably to sanctions previously imposed in adult or juvenile court. He shows no genuine remorse. So those are the factors I have to weigh.

2T. at 224-225.

**{¶52}** The trial court did not find pursuant to R.C. 2929.14(C)(4) that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

**{¶53}** Nor did the trial court find pursuant to R.C. 2929.14(C)(4)(b) that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶54}** Nor did the trial court find pursuant to R.C. 2929.14(C)(4)(c) that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶55}** We find that the record in the case at bar does not clearly and convincingly supports the trial court's findings under 2929.14(C)(4).

**{¶56}** Wimbush's third assignment of error is sustained.

**{¶57}** For the foregoing reasons, the judgment of the Richland County Court of Common Pleas, Richland County, Ohio is affirmed in part and reversed in part. Appellant's sentence in the Richland County Court of Common Pleas is vacated, and the matter remanded for resentencing.

By Gwin, J.,

Farmer, P.J., and

Delaney, J., concur