[Cite as *State v. Mayweather*, 2018-Ohio-1686.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JEREZ S. MAYWEATHER | : | Case No. 17-CA-84 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Licking County
                                Court of Common Pleas, Case No.
                                2017 CR 00134



JUDGMENT:                       Affirmed in part, Reversed and
                                Remanded in part



DATE OF JUDGMENT:               April 27, 2018



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DANIEL BENOIT                             JEREZ MAYWEATHER #A739-326, pro se
Assistant Prosecutor                      Noble Correctional Institution
Licking County Prosecutor's Office        15708 McConnelsville Road
20 South Second Street                    Caldwell, Ohio 43724
Newark, Ohio 43055


                                          Anthony W. Stocco
                                          Morrow, Gordon & Byrd, Ltd.
                                          33 West Main Street P.O. Box 4190
                                          Newark, Ohio 43058-4190

*Baldwin, J.*

{¶1} Defendant-appellant Jerez S. Mayweather appeals his conviction and sentence from the Licking County Court of Common Pleas on three counts of trafficking in heroin. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On February 23, 2017, the Licking County Grand Jury indicted appellant on three counts of trafficking in heroin in violation of R.C. 2925.03(A)(1)(C)(6)(a), felonies of the fifth degree. At his arraignment on May 30, 2017, appellant entered a plea of not guilty to the charges.

{¶3} A jury trial commenced on October 18, 2017. The following testimony was adduced at trial.

{¶4} Deputy Sheriff Greg Collins testified at trial that he was employed through the Licking County Sheriff's Office and was assigned to the Central Drug Enforcement Task Force, which is known as "CODE". On December 15, 2016, CODE arranged a controlled drug buy at the Family Dollar on East Main Street in Newark, Ohio. Deputy Collins testified that the street name of the person who was the target of the drug buy was "Capo". A confidential informant (CI) initiated contact with Capo to set up the buy. Deputy According to Deputy Collins, he went to the location to conduct surveillance and observed a dark colored Ford Edge pull into the parking lot and pull off to the side. A black male wearing all black clothing exited the vehicle and met with the CI. Both the CI and the man then walked back to the vehicle. Deputy Collins observed the CI lean into the vehicle, back out, and then close the door. After the CI walked away, the male got back into the vehicle and drove away. Later the same day, the man was a passenger of a vehicle involved in a traffic stop. Deputy Collins testified that one of the individuals involved in

the traffic stop was identified as appellant and that appellant's clothing matching that of the man who had met with the CI earlier that day. He could not identify appellant as the individual at the drug buy. According to Deputy Collins, the driver of the car that was stopped was female. He testified that this was significant because a female had been driving the vehicle that was driven to the drug buy.  On cross-examination, he agreed that he did not actually see the drug buy take place.

{¶5}   The next witness to testify was Detective Kris Kimble of the Licking County Sheriff's Office who had been working with CODE since 2009. He testified that on December 21, 2016, he participated in a controlled drug buy using a CI at the Giant Eagle parking lot in the Southgate Shopping Center. Detective Kimball, who was conducting surveillance, testified that he observed a red Kia pull up to the CI, the CI enter the vehicle, the vehicle drive around that parking lot for approximately one minute, and then the CI exit the vehicle.   On cross-examination, Detective Kimble testified that he did not actually observe a drug transaction and could not tell who the CI bought the drugs from.

{¶6}   Detective Sergeant Alan Thomas, an employee of the Licking County Sheriff's Office who was assigned to CODE, testified that he participated in three controlled buys involving a target known as Capo and/or Jerez Mayweather. With respect to the December 15, 2016 incident, he testified that he was the supervisor for the buy and was assigned to help with surveillance. He further testified that he "ran" the CI with respect to the December 21, 2016 buy.

{¶7}   Detective Thomas testified that, with respect to the December 15, 2016 buy, he observed a dark colored Ford Edge pull into the Family Dollar parking lot and that the vehicle was driven by a white female. He, however, did not witness the actual buy. Detective Thomas further testified that he participated in the third buy, which occurred on

December 27, 2016, and acted as supervisor and helped out with surveillance. While the initial target location for the third buy was the Subway lot on Mount Vernon Road, the CI walked from the lot and the drug buy occurred on the sidewalk in the area a few blocks from the Subway. He testified that he followed the CI as she walked and saw the CI approached by a black male, although he could not identify the man. Detective Thomas testified that he lost sight of the CI and the black male.

{¶8}    At trial, the CI, the CI, testified that she knew appellant as "Capo" and that she had been introduced to him by a mutual acquaintance in October of 2016. She testified that she agreed to work with CODE to have charges for possession of heroin reduced from a felony of the fifth degree to a misdemeanor. According to the CI, she had purchased drugs from appellant in the past and had his telephone number. When she dialed his number, the name "Capo" appeared.  With respect to the December 15, 2016 buy, the CI testified that she met with Detective Thomas and called Capo to purchase drugs.  The arrangement was for her to purchase $50.00 of heroin.  After appellant, who had been driven to the location by Detective Todd Green, did not show up, the CI called him again. She, when asked, testified that she had been searched both before and after being taken to the location of the buy.

{¶9}    After the second call was placed, appellant came and the two walked over to appellant's vehicle, an SUV driven by a woman, where the CI gave appellant money and he gave her heroin.  The CI testified that she had received the money from CODE and that after the buy, she went around the corner and met with Detective Green and gave him the drugs. When asked if there was any doubt in her mind that appellant was the person who she had given her money to and bought drugs from, the CI testified "No." Trial Transcript at 207.

{¶10} The CI was next questioned about the December 21, 2016 buy. She testified that she met with Detective Thomas and called Capo, telling him that she wanted $50.00 worth of heroin. The CI testified that she saw a red car and that appellant was in the passenger seat. According to the CI, she got into the back seat of the car and gave appellant the money and he gave her the drugs.  After driving around for a few minutes, the CI exited the vehicle. The CI then walked to where Detective Thomas was located and handed him the drugs. She testified that she was searched again.

{¶11}  The CI also testified about the buy on December 27, 2016. She testified that she called appellant and that they were supposed to meet at Subway, but that appellant did not want to walk down Mount Vernon Road "because he felt he was a hot commodity…" Trial Transcript at 216. The CI testified that she ended up walking up Buckingham Street to Central Street and that the transaction occurred on the street. According to her, she had continuous contact with appellant. After the two parted, the CI went back to the Detectives, gave them the drugs, was searched again and filled out a written statement. She testified that she had no doubt that appellant was the person who she dealt with on December 27, 2016 to complete the drug buy.

{¶12}  Recordings of the phone calls that the CI made to appellant to arrange the buys were played for the jury. The CI testified that her voice and appellant's voice were on the recordings.

{¶13}  On cross-examination, the CI testified that she performed approximately six drug buys for CODE over a three month period beginning in December of 2016 and that more than three were from appellant. She admitted to using heroin after she signed her confidential informant contract on December 9, 2016 which prohibited her from using

illegal drugs and to using heroin and other drugs the entire time that she was setting up appellant. On redirect, the CI testified that she had been clean since February of 2017.

**{¶14}** Detective Todd Green of the Newark Police Department testified that he was assigned to CODE and "ran" the first and third buys. He testified that he was in charge of the CI for the two buys. According to Detective Green, when he met the CI for the first time, she "threw the name Capo out." Trial Transcript at 254. He testified that he had been watching Capo for two to three months and that he recorded a telephone call between the CI and Capo. Detective Green testified that he searched the CI's person and her purse before the buy on December 15, 2106 and gave her the pre-recorded buy money. The buy money had been pre-recorded to make sure that they knew the serial numbers of the money provided to the CI.

**{¶15}** Detective Green testified that after the CI made the buy on December 15, 2016, he picked her up and went to a secure location where appellant handed him the heroin. He testified that he requested to have the Ford Edge that appellant was in stopped because he wanted a positive ID on Capo. He further testified that he placed the purchased heroin into evidence and requested that it be tested. Detective Green also testified about the December 27, 2016 buy. He testified that he searched the CI's person and purse, provided her with pre-recorded buy money and fit her with a transmitter. He testified that he was approximately 100 feet away with binoculars when he observed an exchange between the CI and appellant. He asked Detective Thomas to pick the CI up. After Detective Thomas obtained the drugs from the CI, he gave Detective Green the drugs and the CI was searched. Detective Green placed the drugs into evidence.

**{¶16}** On cross-examination, Detective Green admitted that he did not actually see the transaction occur between the CI and appellant on December 15, 2016. With

respect to the December 27, 2016 buy, he admitted that he lost eye contact with the CI while following appellant but testified that Detective Thomas did not.

{¶17} There was testimony at trial regarding the chain of custody with respect to the heroin. At trial, Jennifer Acurio, a Bureau of Criminal Investigation forensic scientist, testified that she tested substances purported to be from the three drug buys. She testified that all contained heroin, a Schedule I drug.

{¶18} At the conclusion of the evidence and the end of deliberations, the jury, on October 19, 2017, found appellant guilty of all three charges. As memorialized in a Judgment Entry filed on October 19, 2017, appellant was sentenced to one year on each count. The trial court ordered that the sentences run consecutively, for an aggregate prison sentence of three years.

{¶19} Appellant filed a timely notice of appeal.

{¶20} Appellate counsel for appellant has filed a Motion to Withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating the within appeal is wholly frivolous. Counsel for appellant has raised the following potential assignment of error:

{¶21} THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS CLEARLY AND CONVINCINGLY CONTRARY TO LAW.

{¶22} Appellant was given an opportunity to file a brief raising additional assignments of error. Appellant, in his brief, raises the following assignments of error;

{¶23} I. JEREZ MAYWEATHER'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF MR. MAYWEATHER'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE

UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶24} II. JEREZ MAYWEATHER'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. MAYWEATHER'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶25} III. JEREZ MAYWEATHER WAS DENIED DUE PROCESS BY PROSECUTORIAL MISCONDUCT WHEN THE PROSECUTOR SUPPRESSED EXCULPATORY IMPEACHING EVIDENCE, FURTHER, JEREZ MAYWEATHER WAS DENIED THE EFFECTIVE ASSISTANCE OF DEFENSE COUNSEL WHEN HE FAILED TO REQUEST A RECESS OR CONTINUANCE TO REVIEW THE SUPPRESSED EVIDECE (SIC).

{¶26} IV. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES.

{¶27} In *Anders,* the United States Supreme Court held if, after a conscientious examination of the record, a defendant's counsel concludes the case is wholly frivolous, then he should so advise the court and request permission to withdraw. *Id.* at 744. Counsel must accompany his request with a brief identifying anything in the record that could arguably support his client's appeal. *Id.* Counsel also must: (1) furnish his client with a copy of the brief and request to withdraw; and, (2) allow his client sufficient time to raise any matters that the client chooses. *Id.* Once the defendant's counsel satisfies these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. If the appellate court also determines that the

appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or may proceed to a decision on the merits if state law so requires. *Id.*

**{¶28}** Counsel in this matter has followed the procedure in *Anders, supra.*

**{¶29}** We now will address the merits of the potential assignments of error.

APPELLANT'S PRO SE ASSIGNMENTS OF ERROR

I, II

**{¶30}** Appellant, in his first two potential assignments of error, argues that his convictions for trafficking in heroin were against the manifest weight and sufficiency of the evidence.

**{¶31}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶32}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶33}** Appellant, in the case sub judice, was convicted of three counts of trafficking in heroin in violation of R.C. 2925.03(A)(1)(C)(6)(a). Such section states as follows:

**{¶34}** (A) No person shall knowingly do any of the following:

**{¶35}** (1) Sell or offer to sell a controlled substance or a controlled substance analog;…

**{¶36}** (C) Whoever violates division (A) of this section is guilty of one of the following:…

**{¶37}** (6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

**{¶38}** (a) Except as otherwise provided in division (C)(6)(b), (c), (d), (e), (f), or (g) of this section, trafficking in heroin is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

**{¶39}** We find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of trafficking in heroin proven beyond a reasonable doubt with respect to the three counts. There was testimony that the CI provided the Detectives with appellant's telephone number and called appellant to arrange to purchase heroin from appellant on the three dates. Before the CI was sent out to meet with appellant, she was searched and provided with pre-recorded money. She was searched again after each controlled buy. With respect to the December 27, 2016 incident, Detective Green testified that he observed an exchange between The CI and appellant. In all of the cases, the CI identified appellant as the one who she bought drugs from and she provided the drugs that she had purchased from appellant to one of the officers. There was testimony as to the chain of custody and that all of the substances purchased testified positive for heroin.

**{¶40}** We further find that the jury did not lose its way in convicting appellant. While there may have been inconsistencies in the testimony of the CI, the jury, as trier of fact, was in the best position to assess her credibility. As noted by appellee during closing arguments, "as much inconsistences as the confidential informant had, there's also significant amount of consistencies throughout the entirety of the testimony and the evidence." Trial Transcript at 349.

**{¶41}** Appellant's first and second assignments of error are, therefore, overruled.

III

**{¶42}** Appellant, in his third potential assignment of error, contends that he was denied due process of law "by prosecutorial misconduct when the prosecutor suppressed exculpatory impeaching evidence." He further argues that he was denied the effective

assistance of trial counsel when his counsel failed to request a recess or continuance to review such evidence.

{¶43} Appellant, in his brief, notes that the CI testified that she made more than the three controlled buys from appellant and that she was told by a woman at the Prosecutor's Office that "something happened with the – with the testing of the dope, the drugs." Trial Transcript at 240. Appellant argues that this was exculpatory impeaching evidence that should have been disclosed by appellee and that his trial counsel was ineffective in failing to seek a recess or continuance to review such evidence.

{¶44} In *Brady v. Maryland* , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court established that the prosecution's failure to disclose evidence favorable to the accused upon request constitutes a violation of the Fourteenth Amendment's due process guarantee of a fair trial when "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. See also, *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988). In addition to the *Brady* standard set forth by the United States Supreme Court, Crim.R. 16 governs the discovery process. Crim.R. 16(B)(5) requires that a prosecuting attorney disclose "[a]ny evidence favorable to the defendant and material to guilt or punishment." *Brady,* supra, requires the disclosure only of "material" evidence, and evidence is "material" only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Johnston,* supra, at paragraph five of the syllabus, following *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶45} In the case sub judice, we fail to find that the CI's vague statements as to other controlled drug buys from appellant were exculpatory or material with respect to the

three controlled buys that were at issue in this case. We cannot say that the Prosecutor committed any misconduct or that trial counsel was ineffective.

{¶46} Appellant's third potential assignment of error is, therefore, overruled.


IV, Counsel's sole assignment of error

{¶47} Appellant, in his fourth potential assignment of error, maintains that the trial court erred in imposing consecutive sentences pursuant to R.C. 2929.14(C)(4). We note that appellant's counsel, in his brief, also raises as a potential assignment of error the trial court's imposition of consecutive sentences.

{¶48} R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences. Appellant was sentenced to one year on each count. The trial court ordered that the sentences run consecutively, for an aggregate prison sentence of three years.

{¶49} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C) (4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. This statute requires the trial court to undertake a three-part analysis. *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C-110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

{¶50} R.C. 2929.14(C)(4) provides as follows:

{¶51} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶52} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶53} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶54} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶55} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the

seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, 2013 WL 2152488, ¶ 36.

**{¶56}** Recently, in *Bonnell*, supra, syllabus, the Supreme Court of Ohio stated that:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings.

**{¶57}** Furthermore, the sentencing court is not required to recite "a word-for-word recitation of the language of the statute." *Bonnell*, ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive sentence contrary to law. *Bonnell,* ¶ 34. However, a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a *nunc pro tunc* entry to reflect what actually occurred in open court. *Bonnell,* ¶ 30.

**{¶58}** The trial court, in the case sub judice, stated on the record in sentencing appellant to consecutive sentences:

**{¶59}** Well, Mr. Mayweather, the Court's considered the purposes and principles of sentencing set out under Section 2929.11, as well as the seriousness and recidivism

factors set out under Section 2929.12. The purposes and principles of sentencing require the Court to consider punishment, deterrence, rehabilitation, and as the prosecutor set out, you come here from the State of Illinois to sell Heroin in some town in Ohio that can't even matter to you, and you've been involved in an organized criminal enterprise to do this. You're not that old. You're 33. You've been to prison before. I don't see any redeeming quality here whatsoever.

On that basis, I'll impose terms of one year in the state penitentiary on each of the three counts and I'll order they run consecutively with each other for a three-year prison term.

**{¶60}** Transcript at 390-391.

**{¶61}** In its October 19, 2017 Judgment Entry, the trial court stated, in relevant part, as follows:

**{¶62}** It is, therefore, ordered that the Defendant serve a stated prison term of one (1) year on Count 1, one (1) year on Count 2, and one (1) year on Count 3 at the Orient Reception Center. Counts 1, 2 and 3 are ordered to run consecutively.

**{¶63}** The Court has decided that the offender shall serve the prison terms consecutively, pursuant to R.C. 2929.14(C)(4), because the Court finds that the consecutive sentences are necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and the Court also finds the following.

**{¶64}** The offender committed one or more of the multiple offenses as part organized criminal activity; and the offender's history of criminal conduct demonstrates

that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶65}** While the trial court made the necessary findings in its Judgment Entry, we find that the trial court did not make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing.

**{¶66}** Appellant's fourth potential assignment of error is, therefore, sustained.

**{¶67}** For the above reason, after independently reviewing the record, we reverse the judgment of the Licking County Court of Common Pleas  in part and remand this matter to the trial court for the limited purpose of resentencing. The request to withdraw as counsel for appellant is DENIED.

By: Baldwin, J.

John Wise, P.J. and

Gwin, J. concur.