[Cite as *State v. Trotter*, 2020-Ohio-1002.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| JUSTIN TROTTER | : | Case No. 2019 CA 0024 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: 　　　Appeal from the Richland County
　　　　　　　　　　　　　　　　　　　Court of Common Pleas, Case No.
　　　　　　　　　　　　　　　　　　　2018CR1017

JUDGMENT: 　　　　　　　　　　　　Affirmed in Part,
　　　　　　　　　　　　　　　　　　　Reversed and Remanded in Part

DATE OF JUDGMENT: 　　　　　　　March 12, 2020

APPEARANCES:

For Plaintiff-Appellee 　　　　　　　For Defendant-Appellant

GARY BISHOP 　　　　　　　　　　WILLIAM T. CRAMER
Prosecuting Attorney 　　　　　　　470 Olde Worthington Road, Suite 200
Richland County 　　　　　　　　　Westerville, Ohio 43082

By: Joseph C. Snyder
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1} Defendant-appellant Justin Trotter appeals his conviction and sentence from the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On December 11, 2018, the Richland County Grand Jury indicted appellant on one count of felonious assault against a peace officer in violation of R.C. 2903.11(A)(2), a felony of the first degree, one count of attempted felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, one count of assault of a peace officer in violation of R.C. 2903.13(A) & (C)(5), a felony of the fourth degree, one count of obstructing official business in violation of R.C. 2921.31(A), a felony of the fifth degree, and two counts of vandalism, one in violation of R.C. 2909.05(B)(1)(b) and the other in violation of R.C. 2909.05(B)(2), both felonies of the fifth degree. At his arraignment on December 18, 2018, appellant entered a plea of not guilty to the charges.

{¶3} The matter proceeded to a jury trial. Prior to the start of trial, State dismissed the count of felonious assault against a peace officer. The following testimony was then adduced at trial.

{¶4} Deputy Jacob Frazier of the Richland County Sheriff's Department was working on November 18, 2018 from 10:00 p.m. to 6:00 a.m. and was in uniform minus a tie. He was driving a marked patrol car. Deputy Frazier testified that it was his first day "on shadow" duty where he no longer had a training officer in the vehicle with him. Trial Transcript at 196. Deputy Frazier testified that 9-1-1 had received a call on November 18, 2018 from a woman who said that a male had frantically knocked on her door, that she had let him and that she believed he was high on something because he was erratic.

A short time after, a man called saying that a man was following him with a gun and that the man was outside of his residence. A woman then picked up the phone and said that there was no man outside with a gun and the call ended. Deputy Frazier was dispatched to the location of the second call, along with Sergeant Henderson and Deputy Dawson.

{¶5} When Deputy Frazier arrived at the residence, he spoke with appellant's grandmother who told him that appellant had come home, was acting odd and that she was afraid of him. Appellant's brother told the Deputy that appellant had locked himself in a bathroom and was throwing things around. Deputy Frazier then knocked on the bathroom door and advised appellant who he was, but appellant refused to come out and continued throwing items and appeared to be barricading the door. Deputy Frazier decided that it would not be safe for him to try to get appellant out of the bathroom by himself and decided to wait until another law enforcement officer arrived on the scene.

{¶6} Sergeant Henderson and Deputy Dawson subsequently arrived. Sergeant Henderson knew appellant and attempted to get appellant to come out of the bathroom and they had appellant's brother speak to him through the door in an attempt to coax him out. The officers also tried to pick the lock, but were unsuccessful. After 40 to 45 minutes, Sergeant Henderson decided that they were going get a ram from his patrol car and if they could not talk appellant out of the bathroom, they were going to have to go through the door.

{¶7} As the deputies tried to enter the bathroom through a hole in the door, appellant was" [v]ery sporadic, uncontrolled almost" and was screaming. Trial Transcript at 204. Appellant would tell the officers that he would come out of the bathroom, but then would not do so and would make requests that he was told were not possible. Appellant,

according to Deputy Frazier, was "rambling on, almost incoherently, combative when we were trying to enter the door, resisting any kind of attempts that we would make to either enter the door or make any type of attempt to have him come out." Trial Transcript at 205. As they tried to enter the bathroom, appellant pushed back at them and tried to keep the door closed.

{¶8} Sergeant Henderson and Deputy Frazier eventually were able to gain entry into the bathroom and used their tasers to order appellant to the ground. After appellant complied, he was handcuffed and removed from the bathroom. Appellant was then placed in the driver rear side of Deputy Frazier's cruiser. Deputy Dawson and Sergeant Henderson went back inside to take pictures of the room while Deputy Frazier remained in his patrol vehicle. While appellant was in the police cruiser, Deputy Frazier was able to obtain information from appellant, including his social security number. The Deputy testified that appellant was compliant, but kept mixing up numbers and had trouble providing the information.

{¶9} When Sergeant Henderson returned to the cruiser, he told Deputy Frazier that appellant needed to be moved from the driver side to the passenger side of the rear seat for safety reasons. When the Sergeant asked appellant to either step out of the vehicle or slide over to the passenger side, appellant refused and the officers unsuccessfully tried to get appellant out of the vehicle. Appellant resisted their attempts to move him to the passenger side.

{¶10} Deputy Frazier testified that he was told to take appellant directly to jail with Sergeant Henderson following close behind and to advise corrections officers at the jail that appellant was disorderly so that there were officers read to handle him.

{¶11} As Deputy Frazier began driving away, appellant started banging his head on the windows and the divider between the front and back seat. Deputy Frazier advised Sergeant Henderson and Deputy Dawson and pulled over immediately. Sergeant Henderson opened the rear door to try to talk to appellant and appellant tried to get out. Sergeant Henderson, however, was blocking appellant's way and appellant "wrapped his legs around Sergeant Henderson and wouldn't let go." Trial Transcript at 217. Sergeant Henderson then began striking appellant's legs to get appellant to release him, but that did not work.

{¶12} Deputy Frazier testified that he tried to pull appellant off of Sergeant Henderson and that he put his gloves on for safety reasons due to the blood on appellant and the vehicle and again tried to pull appellant back, but was unsuccessful. The Deputy then pulled his taser out and delivered a "drive-stun" to appellant, but appellant did not appear to be affected and advised the Deputy that he was just burning appellant's skin. Appellant asked the Deputy if he could smell appellant's skin burning. Trial Transcript at 218.

{¶13} When appellant eventually let go of Sergeant Henderson, the Sergeant and Deputy Dawson attempted to close the door, but appellant used his body to prevent the door from closing. After several tries, they got the door closed. Deputy Dawson then advised Deputy Frazier to get to the jail fast as he could in a safe manner and to not stop. During the drive, appellant was kicking at the doors and windows and spitting, trying to spit blood over the divider. Appellant told Deputy Frazier that he had Hep C and that he was going to spit Hep C blood on him and had a needle that he was going to use against the Deputy. Appellant continued spitting blood in the police vehicle.

**{¶14}** Appellant eventually managed to kick out one of the windows in the police vehicle and put half of his body out of the window as if he was going to jump out of the vehicle. Deputy Frazier then pulled over in a church parking lot followed by Sergeant Henderson and Deputy Dawson and they once again tried to get appellant out of the vehicle. They all had gloves on because appellant was very bloody. The officers had decided that they were going to place appellant in Deputy Dawson's vehicle because it had hard plastic seats and bars on the windows. They struggled to get appellant out of Frazier's vehicle and then he became dead weight, and fell to the ground along with Deputy Dawson and Sergeant Henderson. Appellant wrapped his legs around the rear tire of Deputy Dawson's vehicle. They pulled him off of the tire and he became dead weight again and wrapped his legs around Sergeant Henderson and said that he had Hep C and was going to spit blood on the Sergeant. Deputy Frazier testified that appellant also claimed to have HIV.

**{¶15}** Appellant then spit in Sergeant Henderson's face and Deputy Dawson kicked appellant in his head. Sergeant Henderson tasered appellant. Appellant then relaxed and the Sergeant went to his cruiser to rinse out his mouth and wipe off his face. Appellant was on the ground and was compliant for a while. Deputy Frazier called for an ambulance for appellant and the Sergeant, but the Sergeant did not want to wait and drove himself to the hospital.

**{¶16}** When the ambulance arrived, appellant became difficult again and refused to put on a mask to prevent him from spitting and was flailing and kicking while on the gurney. Appellant continued spitting and trying to spit on people. Appellant tried to break

the handcuffs and appeared to have broken both of his wrists from trying to break them. At the hospital, appellant continued fighting everyone until he was sedated.

{¶17} Appellant tested negative for HIV and only had Hep C antibodies. There was no medical testimony that his Hep C was infectious.

{¶18} During trial, as later memorialized in a Judgment Entry filed on March 13, 2019, the trial court, on appellee's oral motion, had amended Count Two to attempted felonious assault in violation of R.C. 2923.02(A).

{¶19} At the conclusion of the evidence and the end of deliberations, the jury, on March 8, 2019, found appellant guilty of attempted felonious assault of a peace officer, assault of a peace officer, obstructing official business, and both counts of vandalism. Pursuant to a Sentencing Entry filed on March 13, 2019, appellant was sentenced as follows:

{¶20} On Count Two the Court sentenced appellant to seven years. On Count Three, the Court sentenced appellant to eighteen months but merged the offense with Count Two. On Count Four the Court sentenced appellant to twelve months, consecutive to Count Two. On Count Five the Court sentenced appellant to twelve months consecutive to Counts Two and Four. On Count Six the Court sentenced appellant to twelve months but merged it with Count Five. The Court imposed four hundred and ninety-three (493) days of post release control.

{¶21} On November 25, 2019, a Judgment Entry was filed correcting the transcript to indicate that appellant was sentenced to 493 days of post release control.

{¶22} Appellant now raises the following assignments of error on appeal:

**{¶23}** "I. APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY A CONVICTION FOR ATTEMPTED FELONIOUS ASSAULT THAT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶24}** "II. APPELLANT'S CONVICTION OF ATTEMPTED FELONIOUS ASSAULT IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

**{¶25}** "III. APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY A CONVICTION FOR VANDALISM OF PROPERTY NECESSARY TO ENGAGE IN A BUSINESS UNDER R.C. 2909.05(B)(1)(b) THAT WAS NOT SUPPORTED SUFFICIENT EVIDENCE."

**{¶26}** "IV. APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY A CONVICTION FOR VANDALISM OF GOVERNMENT PROPERTY UNDER R.C. 2909.05(B)(2) THAT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶27}** "V. THE TRIAL COURT ERRED BY IMPOSING MULTIPLE SENTENCES ON ALLIED ASSAULT OFFENSES AND ALLIED VANDALISM OFFENSES IN VIOLATION OF R.C. 2941.25 AND THE STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY."

**{¶28}** "VI. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUISITE FINDINGS UNDER R.C. 2929.14(C)(4)."

**{¶29}** "VII. APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY THE IMPOSITION OF 484

DAYS OF POSTRELEASE CONTROL TIME THAT IS NOT SUPPORTED BY THE RECORD."

I, II

{¶30} Appellant, in his first assignment of error, argues that his conviction for attempted felonious assault was not supported by sufficient evidence. In his second assignment of error, he contends that his conviction for attempted felonious assault was against the manifest weight of the evidence.

{¶31} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*{¶32}* In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶33} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶34} Appellant, in the case sub judice, was convicted of attempted felonious assault in violation of 2903.11(A)(1). R.C. 2903.11 states, in relevant part, as follows: "(A) No person shall knowingly do either of the following:(1) Cause serious physical harm to another or to another's unborn;…" Physical harm is any injury or illness, regardless of gravity or duration. R.C. 2901.01(A)(3).

{¶35} Appellant specifically contends that the medical evidence does not indicate that appellant was infected with a communicable disease and that his claims to the contrary were not adequate on their own to prove that his act of spitting on a police officer amounted to attempted felonious assault.

{¶36} In *State v. Price,* 162 Ohio App.3d 677, 2005–Ohio–4150, 834 N.E.2d 847, police officers were dispatched to the home of the defendant where he spat at one of the officers. The defendant was infected with HIV and hepatitis and he knew of his conditions. While the officer was not infected with these diseases, the court noted he had to deal with the concern of possibly being infected with them. The court affirmed the defendant's convictions for both felonious assault and attempted felonious assault.

**{¶37}** In the case sub judice, there was testimony that appellant did not have HIV. However, Dr. Fain, a pathologist, testified at trial that appellant had a positive antibody test for Hep C and that additional testing was required to determine if appellant was currently infected with Hep C. There was testimony at trial that appellant repeatedly indicated to the officers that he had Hep C and that he threatened to infect those around him.

**{¶38}** At trial, Sergeant Henderson testified that he feared that he had contracted Hep C and HIV due to appellant's actions in spitting at him and having appellant's blood come into contact with his face, eyes and mouth. He testified that he was referred to an infectious disease doctor and put on anti-HIV medication and had received treatment the night in question. There is no protective medication against Hep C. The Sergeant testified that, due to the side effects of the medication, he missed about ten days of work. The Sergeant testified that he felt like he had the flu during that period of time. He further testified that every 90 days, he had to get his blood tested for a year and that at the time of trial, he was testing negative for Hep C and HIV. We find that he suffered serious physical harm as a result of appellant's actions.

**{¶39}** Based on the foregoing, we find that construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of attempted felonious assault proven beyond a reasonable doubt and that the jury did not lose its way in convicting appellant of attempted felonious assault.

**{¶40}** Appellant's first and second assignment of error are, therefore, overruled.

III, IV

**{¶41}** Appellant, in his third assignment of error, maintains that his conviction for vandalism of property necessary to engage a business is not supported by sufficient evidence.  In his fourth assignment of error, he argues that his conviction for vandalism of government property is not supported by sufficient evidence.

**{¶42}** Appellant was convicted of vandalism is violation of R.C. 2909.05(B)(1)(b) and (B)(2).

**{¶43}** R.C. 2909.05 states, in relevant part, as follows:

**{¶44}** (B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:…

**{¶45}** (b) Regardless of the value of the property or the amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation.

**{¶46}** (2) No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity. A governmental entity includes, but is not limited to, the state or a political subdivision of the state, a school district, the board of trustees of a public library or public university, or any other body corporate and politic responsible for governmental activities only in geographical areas'

**{¶47}** As noted by appellant, his conviction on two counts of vandalism was based on the damage to the police cruiser, which was clearly government property. There was testimony at trial that appellant kicked at and broke the window in Deputy Frazier's cruiser and that the cruiser was heavily covered in appellant's blood. There also was testimony

that Deputy Frazier's cruiser had to be taken out of service and the window had to be replaced and the inside decontaminated.

**{¶48}** Appellant argues that he only damaged a single cruiser and that, therefore, the requirements of R.C. 2909.05(B)(1)(b) were not satisfied. In *State v. Dunfee,* 177 Ohio App.3d 239, 2008–Ohio–3615, 894 N.E.2d 359 (2d Dist.), the court held that a defendant was guilty of Vandalism, pursuant to R.C. 2909.05(B)(1)(b), when he damaged the window of a Sheriff's Department cruiser, because the "cruiser could not be used for transporting prisoners or other persons in custody while the window was broken and * * * was unusable during the two hours that the window was being repaired." *Id.* at ¶ 36. Despite the fact that the police department had twelve cruisers, the court found that "a reasonable fact-finder could conclude that each cruiser was necessary for the functioning of the Sheriff's Department." *Id.* The court determined nothing in R.C. 2909.05 precluded a prosecution under R.C. 2909.05(B)(1)(b) when the property at issue was governmental property.

**{¶49}** Appellant's third and fourth assignments of error are, therefore, overruled.

V

**{¶50}** Appellant, in his fifth assignment of error, maintains that the trial court erred by imposing multiple sentences on allied assault offenses and allied vandalism offenses in violation of R.C. 2941.25 and the state and federal constitutional protections against double jeopardy.

**{¶51}** In the case sub judice, appellant argued that the felonious assault and assault merged as did the two vandalism counts. Appellee agreed with appellant that the two vandalism counts merged and asked the trial court to sentence appellant on the

vandalism charge contained in Count 5 rather than the other vandalism count. The trial court, however, found that the assault counts merged, noting that it was imposing sentence on both counts to be "run concurrent as those charges merge." Trial Transcript at 611. When sentencing appellant on the vandalism counts, the trial court, as noted by appellee, did not specifically mention merger, but similarly imposed concurrent prison terms.

{¶52} R.C. 2941.25, Ohio's allied offense statute, provides:

{¶53} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶54} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶55} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

{¶56} 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

{¶57} 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶58}** 3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

**{¶59}** The *Ruff* court explained at paragraph 26:

**{¶60}** At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶61}** In the case sub judice, the parties agree that the trial court erred by imposing multiple sentences on allied assault offenses and allied vandalism offenses in violation of R.C. 2941.25 and the state and federal constitutional protections against double jeopardy. The State of Ohio concedes that these offenses are allied offenses and should have been merged.

**{¶62}** Appellant's fifth assignment of error is, therefore, sustained.

VI

{¶63} Appellant, in his sixth assignment of error, argues that the trial court erred by imposing consecutive sentences without making the requite findings under R.C. 2929.14(C)(4).

{¶64} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum,* 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231 ¶ 1. Pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)–(b).

{¶65} R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences. In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C) (4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶23. This statute requires the trial court to undertake a three-part analysis in order to impose consecutive sentences. . *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

{¶66} R.C. 2929.14(C)(4) provides,

{¶67} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the

public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶68}** (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶69}** (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶70}** (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶71}** Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two

or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

**{¶72}** In the case sub judice, the trial court stated on the record that appellant had been "assaultive in your life" and had several domestic violence offenses that were elevated to felonies "because of the sheer number of them." Trial Transcript at 609. The trial court also noted by appellant had gotten out "not too long ago on a felonious assault or an attempted felonious assault" and was on PRC time. Trial Transcript at 609.

**{¶73}** The trial court further found that the officers "bent over backwards trying to be polite" with appellant, but that appellant "didn't want any part of it." Trial Transcript at 609. The trial court further stated, in relevant part, as follows:

**{¶74}** Officer Henderson now, although he went through the initial treatment, still has to go back periodically and still has to wait another 6 months of worrying as to whether he is infected or not.  He has to live with that.  It's on his mind.  He is scared.  He has a right to be scared.  You see, because alls he was trying to do was his job.  Okay?  And he might actually suffer some type of an injury because of your choices, not his.

**{¶75}** As Attorney Schumacher stated, it started by them trying to help your grandmother out.  She wanted you out of that house that evening.  And when officers arrived, you were barricaded in your bathroom, - - or in her bathroom, and your brother implored you to come out because your grandmother had to go to the bathroom, and you

wouldn't do that, to the point where a seventy-some-year-old-lady had to defecate in a bucket because of your choices.

**{¶76}** If this was the first time, Mr. Trotter, I might believe your apology. But the fact of the matter is that you've been beating up on people, assaulting them for a long time. This isn't something new.

**{¶77}** The court has had an opportunity to look at some of your history. The court, looking at the principles and purposes of sentencing within Ohio Revised Code 2929.11 and the seriousness and recidivism factors in 2929.12 believes that a prison sentence and a lengthy one is just in this matter.

**{¶78}** Trial Transcript at 609-610.

**{¶79}** In this case, the record does establish that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences. We also note that in the sentencing entry, the trial court found that consecutive sentences were necessary to protect the public from future crime or to punish the offender; were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; that the offender committed one or more of the offenses while under a community control sanction or PRC for a prior offense; that at least two of the multiple offenses were committed as part of one or more courses of conduct, and that the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of appellant's conduct. The trial court also found that the offender's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by the offender.

**{¶80}** Appellant's six assignment of error is, therefore, overruled.

VII

**{¶81}** Appellant, in his final assignment of error, asserts that his rights to due process under the state and federal constitutions were violated by the imposition of 484 days of post release control time that is not supported by the record.

**{¶82}** We note that in this matter, appellant was on post-release control from a prior felony at the time of the offenses in this case. The trial court, as the sentencing hearing, stated that it was imposing "the remaining 193 days that you have remaining on Post Release Control." Trial Transcript at 611.   Subsequently, pursuant to a Judgment Entry filed on November 25, 2019, the trial court, at the request of the parties, corrected the transcript to read "493 days" rather than "193 days." However, the trial court's March 13, 2019 Sentencing Entry states that appellant received 484 days of post release control.

**{¶83}** Appellant argues, and we agree, that the imposition of 484 days of post release control mentioned in the trial court's Sentencing Entry   is not supported by the record.    As noted by this Court in *State v. Wells*, 5th Dist. Licking No. 14–CA–36, 2015-Ohio-39 at paragraph 8, the time remaining on appellant's post-release control sanction should be calculated from the date of sentencing rather than from the date of the offenses.

**{¶84}** Appellant's seventh assignment of error is, therefore, sustained.

**{¶85}** Accordingly, the judgment of the Richland County Common Pleas Court is affirmed in part and reversed and remanded in part. This cause is remanded to the court for resentencing in accordance with this Opinion.

By: Baldwin, J.

Wise, John, P.J. and

Wise, Earle, J. concur.